LEAR, Judge.
Exxon Corporation (Exxon) filed a petition for declaratory judgment declaring Exxon’s rights under a written lease. Defendants are owners and lessors of certain commercial property located in Slidell, Louisiana. The lease was executed on August 4, 1967, between Humble Oil and Refining Company (now Exxon Corporation) and the *225 original lessor from whom defendants acquired title. The primary term of the lease was twenty-two (22) years with two five year renewal options and covered six lots located in the West Expressway Shopping Center. Exxon sought to sublease a portion of the property which sublease was objected to by defendants.
Defendants answered plaintiff’s petition and reconvened to have the lease cancelled, or in the alternative, to reform the lease.
The issues created, therefore, are whether or not plaintiff’s right to sublease is restricted by the terms of the lease, whether the lease should be reformed, whether defendants are entitled to share in sublease rentals and whether the lease should be cancelled, and if so, damages awarded to defendants for lessee’s alleged default in the lease.
The trial court found that plaintiff has the unrestricted right to sublease as stated in paragraph (7) of the lease.[1] (At the time the lease was executed, shopping center restrictions affected use of lots within the center; however, these restrictions were later declared null and void by the court.)
The court went on to say, “The very language of paragraph (22) is evidence that the parties contemplated the lifting of the restrictions on the . .. lots.”[2]
The trial judge further found that the parties intended free and flexible use of the premises by the plaintiff and had lessors intended to restrict use of the property a statement to that effect should have been incorporated in the lease. LSA-C.C. 2710 subd. 1 provides, “The lessee is bound: (1) To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.”
In determining the “intended use” under the lease the courts may, in absence of express lease provision, look to surrounding circumstances, such as the nature, situation and previous use of the property. Where the lease is silent and surrounding circumstances are ambiguous concerning intended use of leased premises, the ambiguity must be resolved in favor of lessee. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La.1979).
The court found no requirement in the lease compelling plaintiff to use all of the leased premises in its operation of a service station and further dismissed the reconven-tional demand.
A review of the lease (with its amendments), and the record, fails to show any restrictions on plaintiff's free and flexible use of the premises and no basis for reforming the lease. There appears to have been no error or mistake by the parties in execution of the lease. LSA-C.C. 2670 states the three essential requirements for a contract of lease — the thing, the price and the consent. All three are present in this lease and defendants have no cause of ac *226 tion for unjust enrichment.[3] Miami Truck & Motor Leasing Company, et al v. Dairyman, Inc., et al, 263 So.2d 110, (La.App. 1st Cir. 1972).
One final issue raised by defendants concerns alleged failure to use the premises as a good administrator in that weeds, bushes and trees were permitted to grow on a portion of the leased premises, that this area was used as a dumping group and that an illegal fireworks stand was allowed on the premises. As stated by the trial court, “There is no evidence that plaintiff was put in default by registered mail as called for in the lease.” [4] Further, defendants continued to accept rental payments and took no steps to cancel the lease until plaintiff filed suit for declaratory judgment. We find no merit in this contention.
For the above reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. “(7) Lessee may sublet all or any part of the premises but no such subletting shall release the Lessee from its obligations hereunder.”

. “(22) Lessee’s use of the leased premises shall be subject to the restrictive covenants annexed to the deeds dated August 2, 1962, from G. Brian Corporation, registered in COB 328, Folio 462, recorded in MOB 193, Folio 512, registered in COB 328, Folio 467, recorded in MOB 193, Folio 517, and registered in COB 328, Folio 477, recorded in MOB 193, Folio 527, registered in COB 328, Folio 472, recorded in MOB 193, Folio 522, of the Clerk’s Office of St. Tammany Parish, Louisiana, to the extent such restrictions remain in effect on the lots in West Expressway Shopping Center. It is agreed between Lessor and Lessee that such restrictions will not prevent Lessee from constructing, maintaining and operating on Lots 18-B and 17-B, or either of them, a modular illuminated or non-illuminated sign, with the necessary poles and wiring for the purpose of advertising the business or businesses operated on Lots 17-A and 18-A, provided said sign conforms to the prevailing requirements of the municipal, state and federal laws, ordinances, statutes and regulations; but provided further that should the abovementioned restrictions be interpreted in a final decision by a court of last resort that has competent jurisdiction, so as to prevent Lessee from constructing, maintaining and using such a sign on Lots 17-B and 18-B, Lessee may, at Lessee’s option, cancel and terminate this lease upon giving Lessor thirty (30) days written notice thereof.”

. LSA-C.C. 1964:
“Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.”

. “(8) Anything herein contained to the contrary notwithstanding, Lessor agrees not to exercise any landlord’s remedies against Lessee by reason of any default unless and until Lessor shall have given to Lessee written notice by registered mail of the default and unless Lessee shall have failed to remedy such default within a period of thirty (30) days from the giving of such notice.”